### THE JOHN COTTRELL.

### THE STARLIGHT.

### LAVERTY *v.* THE JOHN COTTRELL and THE STARLIGHT.[1]

(*District Court, S. D. New York.* April 21, 1888.)

1. SHIPPING—CARRIAGE OF GOODS—LIABILITY FOR LOSS.
    The lighter J. C., with a deck-load of iron bars, moored outside of another vessel lying at a wharf. As the tide went down, she took the bottom, or some obstruction, gradually careened, and lost her deck-load overboard. She selected the mooring place herself, which was an improper one, and was left without a watchman. *Held,* that she was responsible for the loss of the iron.

2. COLLISION—AT PIER—COSTS—FIFTY-NINTH RULE.
    On being libeled in this suit, the lighter brought in under the fifty-ninth admiralty rule the barge S., which was the vessel along-side of which she had moored, claiming that the barge, being moored unskillfully, had careened against her, forced down her rail, and thus caused the loss of the deck-load. *Held* that, even had the accident occurred in this way, the barge S. was not liable, as she owed no duty to the lighter, which had moored along-side of her own volition, without request or permission, and at her own risk. Being brought into the suit by petition of the lighter C., *held,* that the barge should recover her costs of the C., and not of the libelant.

In Admiralty.
*Hyland & Zabriskie,* for libelant.
*Edwin G. Davis,* for the John Cottrell.
*Goodrich, Deady & Goodrich,* for the barge.

BROWN, J. In July, 1887, the libelant contracted with the owners to transport for them a quantity of iron bars from the Pennsylvania Railroad, Jersey City, to Cornell's wharf, foot of Twenty-Sixth street, North river. The libelant thereupon made a subcontract with the captain of the lighter John Cottrell to transport the iron. The cargo was loaded and taken to the basin in which Cornell's wharf is located, where the

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

lighter arrived about 7 o'clock in the evening of the 4th of August. The basin is formed by a causeway built of stone and rubble, which, curvi ḡ outward and to the northward from the foot of Twenty-Sixth street, ʼu · s up in a line with the river for about 1,000 feet, leaving but a narrow inlet of from 40 to 60 feet wide along the front of Cornell's wharf, between that and the causeway. The wall of the causeway was not vertical, and the testimony is not satisfactory as to the actual width of the basin in front of the wharf. When the Cottrell arrived there was no one present to give directions where she should go. Another vessel was lying by the wharf to the southward, and there was not room for another to lie along-side. A little to the north of the wharf, or about opposite to its northern end, the barge Starlight was moored along-side the causeway, but angling a little towards the wharf, and the captain of the lighter concluded to moor along-side the barge. About 4 o'clock on the following morning the lighter careened towards the barge to such an extent that the iron, which was loaded on deck, slid off into the water. This suit was brought to recover for the loss and for the damage to the iron thereby occasioned.

It was claimed by the lighter that the barge was improperly moored; so that, by slipping upon the rocks and careening outward, she caught the lighter's rail, and gradually pressed her down until the iron was precipitated into the water. I do not think the evidence sustains this contention; nor, if it were true, do I think the barge could have been held answerable for the damages. Even if she had been moored unskillfully, having reference to the peculiarities of the place, and was liable to take the ground and careen at low water, she owed no duty in that respect to the lighter, which moored along-side of her of her own volition, without request or permission, and, as I find, at her own risk. The duty of watching, as regards any results of grounding, was the duty of each as regards her own safety. When the lighter arrived none of the barge's men were on board, but only a watchman for the night. As against the Starlight the libel must therefore be dismissed; but inasmuch as she was brought in as a party defendant on petition of the Cottrell, under rule 59 in admiralty, the Cottrell, and not the libelant, must pay the costs.

There is a conflict as regards the precise place where the barge and lighter were moored, and as to the cause of the accident. There is considerable evidence to show that the barge extended into the narrow entrance abreast of the wharf, and was angling a little across it, so as to bring the lighter's bows very near to the upper end of the wharf; and that with the fall of the tide the side of the lighter caught upon some projecting log, thereby causing her to careen to starboard, as above stated. This theory finds some confirmation in the fact testified to by the barge's witnesses that neither the barge nor her lines showed any traces of change or injury, such as must have happened had she slid down upon the sloping rocky bottom at the low ebb, when this accident took place. This is sustained by the majority of disinterested witnesses, and, I am inclined to think, is the more probable account of the accident. The lighter was not moored in the usual or customary place, or

in the usual manner. She was left without a watchman, or, if the man on board was intended as a watchman, he wholly neglected his duties, and got on deck but a few moments before the iron went overboard. The evidence shows that the iron was lost after several hours of gradual careening of the lighter, and, as would appear from the almanac, at just about low water. From whichever of the two causes assigned the accident happened, this was not reasonable and proper care for a cargo like iron, liable to slip off the deck. Without considering, therefore, the question whether the lighter, in a case like the present, was under the obligations of a common carrier, which many late authorities in this country would seem to sustain, (see Hutch. Carr. §§ 58, 61; Browne, Carr. §§ 74, 32, note; *Sumner* v. *Caswell*, 20 Fed. Rep. 249,) I think the lighter must be held answerable for not in the first place making the necessary inquiries and examination to obtain a safe place to moor for the night, in a place where the circumstances were evidently peculiar and unusual, and also, after having thus moored without ascertainment or inquiry, for being left without any watchman to look after her safety at night during the rise and fall of the tide in such a place.

The libelant is entitled to a decree against the Cottrell, with costs.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.